UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

CLARENCE EVERETT M.,[1]

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

Case No. 1:24-cv-00235-DKG

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Plaintiff filed a Complaint for judicial review of the Commissioner's denial of his

applications for disability and disability insurance benefits. (Dkt. 1). Having reviewed the

Complaint, the parties' memoranda, and the administrative record (AR), the Court will

reverse and remand the decision of the Commissioner for the reasons set forth below.

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## BACKGROUND

On February 11, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on March 5, 2017. (AR 17). Plaintiff's application was denied initially and on reconsideration. A hearing was conducted on April 11, 2023, before Administrative Law Judge (ALJ) David Willis. (AR 17).[2]

After considering testimony from Plaintiff and a vocational expert, the ALJ issued a written decision on August 1, 2023, finding Plaintiff not disabled. (AR 17-28). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Plaintiff timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

On the alleged disability onset date, Plaintiff was fifty-nine years of age. Plaintiff is a high school graduate with past relevant work experience as a warehouse operations manager. (AR 27). Plaintiff claims disability due to physical and mental impairments including loss of visual acuity, chronic kidney disease, osteoarthritis, hyperlipidemia, obesity, carpal tunnel syndrome, hernias, disorders of the gastrointestinal system, muscle, ligament, and fascia, sleep apnea, depressive disorders, anxiety disorders, and disorders of the skeletal spine. (Dkt. 15 at 2); (AR 77-78).

---

[2] The hearing was conducted with Plaintiff's consent via telephone video due to the Coronavirus Pandemic of 2019. (AR 17).

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520 and 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 5, 2017, the alleged onset date. (AR 19). At step two, the ALJ determined Plaintiff suffers from the following medically determinable severe impairments: degenerative disc disease, stage 3 kidney cancer, osteoarthritis and allied disorders, loss of visual acuity, and disorders of the muscle, ligament, and fascia. (AR 20). The ALJ found Plaintiff's obesity, macular hole in the right eye, carpal tunnel syndrome, and sleep apnea to have caused only transient or mild symptoms and limitations, are well controlled with treatment, or are otherwise not adequately supported by the medical evidence in the record, and are therefore, non-severe (AR 20).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 01). The ALJ next found Plaintiff retained the Residual Functional Capacity (RFC) for light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

**MEMORANDUM DECISION AND ORDER - 3**

> [The claimant] can occasionally stoop, crouch, kneel, and climb ramps or stairs. The claimant can also never crawl or climb ladders, ropes, and scaffolds. Additionally, he must avoid concentrated exposure to dust, odors, fumes, pulmonary irritants, and vibration. The claimant is also limited to occasional near visual acuity.

(AR 22).

At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a warehouse operations manager, as such work would not require the performance of work-related activities precluded by Plaintiff's RFC. (AR 27). Because the ALJ found Plaintiff could perform his past relevant work at step four, the ALJ did not move on to step five of the sequential evaluation. The ALJ determined that Plaintiff was not under a disability from May 5, 2017, the alleged onset date, through December 31, 2021, the date last insured. (AR 28).

## ISSUE FOR REVIEW

1.    Whether the ALJ sufficiently addressed the functional impact and developed the record with regards to Plaintiff's vision impairments.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

**MEMORANDUM DECISION AND ORDER - 4**

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.*

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

## DISCUSSION

1. **The ALJ Failed to Consider and Develop the Record as to the Impact of Plaintiff's Vision Symptoms.**

Plaintiff asserts that the ALJ erred by failing to evaluate the functional impact and develop the record as it relates to Plaintiff's vision impairment. (Dkt. 15 at 6). Specifically, Plaintiff first alleges that the ALJ ignored his symptom of a constant and central gray line across his vision when determining whether Plaintiff could perform his past relevant work, and second, that an ophthalmologist's opinion was needed for the record to be fully developed. *Id.* at 6-11. Defendant contends that the ALJ expressly considered the symptoms associated with Plaintiff's vision impairments but properly discounted his symptom statements and developed the record as needed. (Dkt. 17 at 2).

As Defendant points out, the ALJ did expressly recognize Plaintiff's symptom allegation of a gray line going through his vision that affected his ability to read numbers,

MEMORANDUM DECISION AND ORDER - 5

but generally discounted Plaintiff's subjective symptom testimony. (Dkt. 17 at 2).

However, Plaintiff further clarifies that although the ALJ may have mentioned the

specific symptom of the line through Plaintiff's vision within the decision, the ALJ still

failed to consider the impact of that symptom on his ability to perform his past relevant

work. (Dkt. 19 at 3).

The Court will initially summarize the ALJ's findings related to Plaintiff's visual

impairments. The ALJ at step two found Plaintiff's loss of visual acuity to be a medically

determinable severe impairment.[3] (AR 20). When discussing Plaintiff's symptom

testimony, the ALJ noted that Plaintiff endorsed vision issues consisting of floaters and

flashes, diagnosed as macular holes in both eyes. (AR 22). Plaintiff reported vision

improvement after treatment for the macular holes and removal of cataracts but reported

continuing to have a line going through his vision, which specifically affected his ability

to read numbers on a spreadsheet. (AR 22).

Plaintiff's medical records from August 2018 found that his visual acuity was

20/40 on the right and 20/25 on the left, and he reported flashes and floaters, as well as

mildly decreased vision. (AR 25, 848-49). Plaintiff was diagnosed with vitreous

degeneration on the left, puckering of macula on the right, other vitreous opacities

bilaterally, and age-related nuclear cataract bilaterally. *Id*. Plaintiff reported no significant

vision changes in his follow up appointments but was continuously experiencing large

---

[3] "A loss of visual acuity limits your ability to distinguish detail, read, or do fine work." Listing
2.00A(1); *see also* Listing 2.00A(4) (setting out conditions in which the Commissioner "will request a
description of how your visual disorder affects your ability to function.").

floaters in the left eye. (AR 25, 859, 864). However, in November 2021, Plaintiff was

evaluated for vitrectomy to repair a macular hole in the right eye, which began six

months prior. (AR 25, 875). Upon examination, he was found to have a visual acuity of

20/50 on the right and 20/40 on the left. Notably, during this visit, Plaintiff reported to his

ophthalmologist that his main concern was a permanent gray spot in his vision, which

caused lines to appear wavy and when he looked at numbers, some of them are missing

and he must move his head to see the others. (AR 875).

The ALJ found that the longitudinal evidence of record did not support Plaintiff's

allegations concerning the intensity, persistence, and limiting effects of his symptoms.

(AR 26). Specific to Plaintiff's visual impairment, the ALJ noted a past diagnosis of

retinal detachment as well as a more recent macular hole repair. (AR 27). Still, the ALJ

found that examination records indicated that Plaintiff's vision was preserved, with 20/50

and 20/40 visual acuity. (AR 27). The ALJ also pointed to Plaintiff's daily activities,

consisting of tending to personal care, driving, shopping in stores, managing money,

walking his dog, and engaging in household chores to support his conclusion that

Plaintiff's level of activity was inconsistent with someone alleging such severe

symptomology. *Id.*

Ultimately, the ALJ did include a limitation in Plaintiff's RFC limiting him to

"occasional near visual acuity." (AR 22). Relying on the testimony of the vocational

expert, the ALJ determined that Plaintiff could perform his past relevant work as a

warehouse operations manager. During the hearing, the vocational expert clarified that

Plaintiff's past relevant work would require visual acuity a third of the day, which would

include reading spreadsheets and other tasks requiring that Plaintiff have the ability to
distinguish detail, read, or do fine work. (AR 68); Listing 2.00A(1).

Relevant to Plaintiff's overall argument, Plaintiff argued during the hearing that
his vision impairment would preclude him from performing his past relevant work as a
warehouse operations manager because he would not have the required visual acuity to
read spreadsheets or budgets with numbers to a sufficient degree. (AR 70). The ALJ
stated that he understood Plaintiff's argument, but noted that "we're speculating a lot
here, both [Plaintiff's counsel] and I, on what is and is not in his vision." *Id*. The ALJ
went on to state that, "[w]e're taking it from his testimony and the medical records that
support that testimony. . .. If I think I need another examination, I'll do that also. . ..
We're not ophthalmologists and we're basing it off his subjective testimony about what
he can and cannot do." (AR 70-71).

To summarize, the ALJ stated during the hearing that they were "speculating a lot"
when evaluating whether Plaintiff's visual impairment would preclude his ability to
perform his past relevant work. Then, the ALJ acknowledged that because neither
Plaintiff nor the ALJ were ophthalmologists, they were basing what he can and cannot
see off his subjective testimony. These statements made by the ALJ provide support for
Plaintiff's argument that an ophthalmologist's opinion should have been sought to better
determine the impact of Plaintiff's symptoms on his visual acuity. (AR 70-71);
*see Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (noting that an ALJ may
not rely on his "own speculation"); *Nguyen v. Chater*, 172 F.3d 31, 35 (9th Cir. 1999)
(while the ALJ has the duty to resolve conflicts in record, the ALJ may not do so through

speculation).

"Social Security proceedings are inquisitorial rather than adversarial [and thus] [i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." *Sims v. Apfel*, 530 U.S. 103, 110-11, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000); *Fisher v. Astrue*, 788 F. Supp. 2d 1219, 1225 (E.D. Cal. 2011) (stating that "[i]n Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel.") (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). The duty is triggered when there is ambiguous evidence, or the record is inadequate to evaluate the evidence. *Id.* (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

While the ALJ went on to state during the hearing that if he thought he "need[ed] other examination, [he]'ll do that also", the Court finds that the lack of evidence as to the effect of Plaintiff's vision symptoms beyond a standard visual acuity test performed by the consultive examiners triggered the ALJ's duty here to further develop the record as it relates to Plaintiff's visual impairments. (AR 71). Defendant contends that the ALJ's statement at the hearing, that if he needed another examination, he would order one, demonstrates that the record was fully developed. The Court struggles to reconcile Defendant's argument here with the ALJ's previous statement that the record called for speculation as to Plaintiff's visual impairment because of the lack of ophthalmologist opinion. (AR 70-71).

As such, the ALJ's acknowledgment of the insufficient or ambiguous evidence

regarding Plaintiff's vision impairments due to the lack of an ophthalmologist's opinion should have prompted the ALJ to resolve those ambiguities by further developing the record and getting an opinion from an ophthalmologist. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan*, 242 F.3d at 1150) (an ALJ's duty to develop the record beyond the medical records themselves is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); *see Reed v. Massanari*, 270 F.3d 838, 843 (9th Cir. 2001) (holding where available medical evidence is insufficient to determine the severity of the claimant's impairment, the ALJ should order a consultative examination by a specialist); *accord Kish v. Colvin*, 552 F. App'x 650, 651 (9th Cir. 2014). The medical record without an ophthalmologist's opinion does not adequately allow for proper evaluation of the evidence and is uncertain and ambiguous as to the functional limitations caused by Plaintiff's vision impairment.

Defendant asserts that because the ALJ found other medical opinions in the record to be persuasive, the ALJ properly relied on those opinions to support the limitations in the RFC and therefore the record was fully developed. (Dkt. 17 at 2). Consultive examiner Spackman found Plaintiff to have decreased vision with a left retinal detachment, his vision was 20/25 with glasses, and he was noted to need to change his head position to get the floaters out of the way to be able to see properly. (AR 792-94). Spackman also noted Plaintiff's symptom complaint of a "rod" in his vision that he has to adjust how he views things. (AR 791). Spackman opined that Plaintiff would require limitations on jobs requiring precise vision. (AR 794). Consultive examiner Arnold

opined that Plaintiff could perform work requiring occasional near acuity. (AR 81).

However, none of the consultive examiners were ophthalmologists, nor do they expressly discuss the functional impact of Plaintiff's symptom allegation of a gray line intersecting his vision and effecting his ability to read numbers. Further development of the record is required when the additional evidence needed is not contained in the records of Plaintiff's medical sources, or when highly technical or specialized medical evidence not available from Plaintiff's medical sources is needed. 20 C.F.R. § 404.1519a(b).

Defendant also contends that because the ALJ rejected Plaintiff's symptom testimony, Plaintiff's vision symptoms were properly discounted, meaning the record was fully developed. As explained above, although the ALJ expressly acknowledged Plaintiff's complaint of a line going through his vision effecting his ability to read numbers, the ALJ did not sufficiently address the impact of that symptom on Plaintiff's ability to perform his past relevant work because he failed develop the record as necessary. Additionally, the Court finds that the decision lacks discussion from the ALJ regarding evidence that contradicts Plaintiff's symptom allegation regarding the line across his vision. Further, even if the ALJ discredited Plaintiff's visual symptom testimony as Defendant alleges, that does not satisfy the ALJ's duty to fully develop the record when an additional consultive examination is needed.

As such, the current record lacks evidence addressing Plaintiff's symptom allegation of a gray line intersecting his vision effecting his ability to read numbers and the functional impact of such a symptom on Plaintiff's ability to perform his past relevant work. The ALJ acknowledged such during the hearing. Once the duty to further develop

the record is triggered, failure to do so constitutes reversible error. *See Tonapetyan*, 242

F.3d at 1150-51. Had the ALJ more fully developed the record by obtaining a consultive

examination from an ophthalmologist, the ophthalmologist may have offered an opinion

regarding functional limitations related to Plaintiff's vision impairment and symptoms.

Consequently, the ALJ may have included additional limitations in the RFC and in the

hypothetical questions to the vocational expert. *See Tonapetyan*, 242 F.3d at 1150-51

(finding that the ALJ's failure to fully develop the record was not harmless); *see also*

*Struck v. Astrue*, 247 F. App'x 84, 86 (9th Cir. 2007) (same).[4]

## CONCLUSION

Based on the foregoing, the Court finds harmful error in the ALJ's failure to

further develop the record as to Plaintiff's visual impairment. The Court will reverse and

remand the ALJ's decision for further administrative proceedings. The decision whether

to remand for further proceedings or award immediate benefits is within the discretion of

the Court. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). Remand for a direct

award of benefits is generally proper where no useful purpose would be served by further

administrative proceedings, or where the record has been fully developed. *Trevizo*, 871

F.3d at 682-83. However, in cases where further administrative review could remedy the

Commissioner's errors, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th

Cir. 2011); *Harman v. Apfel*, 211 F.3d 1172, 1179-81 (9th Cir. 2000). Generally, when

---

[4] Having found that remand is warranted based on the issue of the ALJ's failure to fully develop the record, the Court declines to address Plaintiff's remaining issues. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is

to remand to the agency for additional investigation or explanation." *Benecke v.*

*Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

Here, the ALJ erred by failing to develop the record as to Plaintiff's visual

impairment. The circumstances presented in this case suggest that further administrative

review could remedy the Commissioner's errors. *Burrell v. Colvin*, 775 F.3d 1133, 1141

(9th Cir. 2014) (Remand is proper where "the record as a whole creates serious doubts as

to whether the claimant is, in fact, disabled within the meaning of the Social Security

Act."). The ALJ will necessarily need to further develop the record as needed and

proceed to the remaining steps as appropriate.[5] Accordingly, the Court finds it

appropriate to reverse and remand for further administrative proceedings.

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED** that:

1) The decision of the Commissioner of Social Security be **REVERSED**; and

2) This action be **REMANDED** to the Commissioner for further proceedings

consistent with this opinion;

3) The Remand shall be considered a "sentence four remand," consistent with 42

U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002); and

---

[5] Plaintiff's opening brief appears to contend that if the Court found the ALJ erred, justifying remand, the Court should require the Commissioner to find that Plaintiff has no past relevant work and is therefore disabled at step five by virtue of the new rule reducing past relevant work from fifteen to five years. (Dkt. 15 at 12-13); *see also* 20 C.F.R. § 404.1560(b) (2024). However, by remanding for further proceedings consistent with this opinion, the Court is not engaging in fact-finding at steps four and five.

4) Judgment be **ENTERED** in favor of Plaintiff.

DATED: June 26, 2025

Honorable Debora K. Grasham
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**